# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | File No. 19-CR-303 (SRN/KMM) |
| Plaintiff, | |
| v. | ORDER ADOPTING R&R |
| Patrick Lloyd Henry, | |
| Defendant. | |

Allen A. Slaughter, Jr., United States Attorney's Office, 300 South 4th St., Ste. 600, Minneapolis, MN 55415, for the Government

Thomas H. Shiah, Law Offices of Thomas H. Shiah, Ltd., 331 2nd Ave. S., Ste. 705, Minneapolis, MN 55401, for Defendant

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Objections [Doc. No. 50] filed by Defendant Patrick Lloyd Henry to Magistrate Judge Katherine M. Menendez's May 20, 2020 Report and Recommendation ("R&R") [Doc. No. 48]. In the R&R, Magistrate Judge Menendez recommended that Defendant's Motion to Suppress Statements [Doc. No. 22] and his Motion to Suppress Evidence [Doc. No. 23] be denied. For the reasons set forth below, Henry's Objections are overruled, the Court adopts the R&R, and denies Henry's Motion to Suppress Statements, and his Motion to Suppress Evidence.

## I. BACKGROUND

### A. Factual Background

Henry is charged with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). (Indictment [Doc. No. 10] at 1–2.) As set forth in the R&R, the charge stems from a traffic stop that occurred at approximately 3:15 a.m. on March 12, 2019, in Rochester, Minnesota. (R&R at 1.) At that time, Rochester Police Department Officer Jake Matz observed an Oldsmobile Cutlass Sierra travel in a circuitous pattern, in a primarily residential neighborhood that was otherwise "very quiet" at that time of day. (*Id.*) His suspicions aroused, Officer Matz decided to follow the vehicle. (*Id.*) In light of their relative positions and his own rate of speed, the officer believed that the Cutlass Sierra was speeding and attempting to evade contact with the police. (*Id.* at 2.) After briefly losing sight of the vehicle, Officer Matz caught up with it as the driver pulled over to the curb and parked. (*Id.*)

Due to this driving behavior, the rate of speed, the place and time of day, and the vehicle's strange route, Office Matz became "highly suspicious" that the occupants of the Cutlass Sierra were attempting to evade police contact. (*Id.*) He activated his lights and siren and initiated a traffic stop. (*Id.*) Michael Kochen, the driver, admitted that he did not have a valid driver's license or insurance. (*Id.*) Henry was sitting in the front passenger's seat. (*Id.*)

While speaking with Kochen, Officer Matz observed that the interior of the vehicle was in poor condition, a suspected digital scale was on the floorboard of the driver's area, Kochen and Henry were smoking cigarettes, and glue sticks were in the vehicle—all of which made Officer Matz suspicious of drug-related activity. (*Id.* at 2–3.)

After confirming Kochen's prior convictions for driving without insurance, and his current lack of insurance, Officer Matz decided to arrest Kochen. (*Id.* at 3.) During a search incident to the arrest, Officer Matz found a jar containing approximately 5 grams of marijuana on Kochen's person. (*Id.*) He then searched the car for evidence of narcotics. (*Id.*)

Meanwhile, as Officer Matz arrested Kochen, Henry asked another officer, Officer Dezell, several times if he was under arrest and could call for a ride. (*Id.*) Approximately six minutes after Officer Matz informed Kochen that he was under arrest, Officer Dezell asked Henry to exit the Cutlass Sierra. (*Id.*) In the intervening time, Kochen was handcuffed, taken to Officer Matz's squad car, searched incident to arrest, and secured in the back seat of the squad car. (*Id.*)

While exiting the Cutlass Sierra, Henry removed his winter coat, pulled a sweatshirt from the coat, and left both items on the seat. (*Id.*) Because the temperature was approximately 17 degrees Fahrenheit, Officer Dezell asked Henry if he wanted to wear his coat. (*Id.*) Henry confirmed that he did not. (*Id.*) Officers conducted a pat search of Henry for purposes of officer safety. (*Id.*)

The officers also searched the car, with Henry standing outside. (*Id.* at 4.) Because of the cold temperature, Officer Matz directed Henry to sit in the squad car. (*Id.*) Shortly thereafter, Officer Loken picked up Henry's coat from the seat of the Cutlass Sierra and found a loaded firearm and magazine inside it. (*Id.*) After checking Henry's criminal history and finding that he had a felony record, Officer Matz placed him under arrest. (*Id.*)

Officers found other contraband in the vehicle, including seven bags of methamphetamine, each weighing between 23 and 28 grams, which were found under the

3

sweatshirt that had been under Henry's coat. (*Id.*) The officers also found additional empty baggies and digital scales. (*Id.*)

On November 7, 2019, the Government filed a criminal complaint against Henry, and a warrant for his arrest was issued. (*Id.*) Because he had been in custody in Rochester, Minnesota on state charges arising from the same events, Investigator Kelly McMillin transported Henry from the Olmsted County Jail in Rochester to St. Paul. (*Id.*) At the beginning of the trip, Investigator McMillin read Henry his *Miranda* rights, then told him that they could talk during the drive, if Henry wished. (*Id.*) Henry indicated that he understood his rights and continued to speak with McMillin. (*Id.*) As relevant here, during their conversation, Henry asked Investigator McMillin to identify the charges for which he was being transported to federal court. (*Id.*) Investigator McMillin stated that Henry was being charged as an Armed Career Criminal. (*Id.*) The following discussion ensued:

> Mr. Henry: What's that?
>
> Investigator McMillin: It means you have an extensive criminal history and involvement with firearms.
>
> Mr. Henry: What the hell does that mean?
>
> Investigator McMillin: What does that mean?
>
> Mr. Henry: They're trying to charge me with Armed Career Criminal?
>
> Investigator McMillin: Yeah, they're—that's what the prosecutor's charged you with, correct.

(*Id.*)

4

### B. R&R

In the R&R, Magistrate Judge Menendez addressed Henry's motion to suppress the evidence seized during the March 2019 traffic stop, as well as his motion to suppress the statements made during the November 8, 2019 car trip from Rochester to St. Paul. Magistrate Judge Menendez found that the traffic stop was justified because Officer Matz had probable cause to believe that the Cutlass Sierra was speeding. (*Id.* at 6.) In addition, she found that he had reasonable, articulable suspicion to stop the vehicle based on the evasive driving behavior, the speeding in response to the presence of law enforcement, and the location and time of day. (*Id.*)

As to the extension of the stop and seizure of Defendant, Magistrate Judge Menendez also found no Fourth Amendment violation. (*Id.* at 7.) She found that the relatively short time period between the initial stop and the discovery of the firearm and methamphetamine was not excessive, given the evolving circumstances known to the officers at the scene. (*Id.*) Having determined that the initial stop and seizure were lawful, she rejected Henry's fruit-of-the-poisonous-tree argument, finding that the search of the vehicle and Henry's coat were also lawful. (*Id.* at 10.)

Regarding the motion to suppress the statements made during the November 8, 2019 car ride, Magistrate Judge Menendez first found that the Sixth Amendment had not yet attached, given that only a complaint had been filed. (*Id.* at 11–12.) And, regardless of whether the right had attached, she found that Henry had lawfully waived his *Miranda* rights. (*Id.* at 12–13.)

### C. Objections

In his Objections, Henry argues that he was subjected to an illegal traffic stop, and the stop was unlawfully extended without justification. (Objs. at 1–5.) As to his November 8, 2019 statements, while he acknowledges Eighth Circuit authority that the Sixth Amendment right to counsel does not attach with the filing of a complaint, he respectfully disagrees, and argues that the right attached prior to his conversation with Investigator McMillin. (*Id.* at 5.) In addition, he objects to the conclusion that he made a knowing waiver of his *Miranda* rights. (*Id.* at 5–6.)

In response to Henry's Objections, the Government requests that the Court adopt the R&R and deny Henry's motions. (Gov't's Response [Doc. No. 51].)

## II. DISCUSSION

The district court must undertake an independent, de novo review of those portions of the R&R to which a party objects and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); *see also* D. Minn. L.R. 72.2(b)(3).

### A. Motion to Suppress Evidence

As noted, Henry argues that because he was subjected to an illegal traffic stop, and his seizure during the stop was unlawfully extended without justification, all evidence seized during the stop should be suppressed. (Objs. at 1–5.)

First, Henry asserts that there was insufficient evidence to support the magistrate judge's finding that the Cutlass Sierra was speeding. (*Id.* at 2.) The Court disagrees. As the magistrate judge observed, any traffic violation provides probable cause to stop a vehicle.

6

*United States v. Ramos-Caraballo*, 375 F.3d 797, 801 (8th Cir. 2004). The determination of whether probable cause for the stop existed is not made in hindsight, but is based on what an officer reasonably believed at the time. *See United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999). Furthermore, under *Terry*, an investigative stop does not violate the Fourth Amendment if it is supported by reasonable suspicion that the person stopped is involved in criminal activity. *United States v. Arnold*, 835 F.3d 833, 838 (8th Cir. 2016) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). If an officer can point to "specific and articulable facts" and rational inferences drawn from those facts to support reasonable suspicion, a *Terry* stop is valid. *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (citing *Terry*, 392 U.S. at 21). A court considers the totality of the circumstances to determine whether a *Terry* stop was justified. *Id.*

The totality of the circumstances here shows that the stop of the Cutlass Sierra was supported by reasonable, articulable suspicion and probable cause. The Court rejects Henry's argument that Officer Matz could not have credibly believed that the Cutlass Sierra was speeding. As the magistrate judge noted, Officer Matz testified that he had to travel over the speed limit in order to keep up with the Cutlass Sierra, and still remained far behind it until it eventually stopped. (R&R at 6.) In addition, the magistrate judge noted that video of the Cutlass Sierra showed it actively pulling away from Officer Matz, and the sound of rapid acceleration could be heard on the audio after the vehicle made a turn. (*Id.* at 6.)

The Court likewise disagrees with Henry as to whether evasive driving provided probable cause to support the stop. While Henry asserts that the car's path was not illegal, and merely consistent with the path taken by a driver trying to locate a house in an unfamiliar

7

neighborhood, "police are entitled to be suspicious of vehicular movement that, while not illegal, may be reasonably perceived as evasive." *United States v. Juvenile TK*, 134 F.3d 899, 903 (8th Cir. 1998). Given the unusual route taken by the Cutlass Sierra, and the unusual time of day, Officer Matz could reasonably perceive the movements of the vehicle as evasive. Accordingly, the Court overrules Henry's objection that the traffic stop was not supported by probable cause.

Next, Henry argues that even if the stop was supported by probable cause, the Court should nevertheless reject the magistrate judge's finding that the extension of Henry's seizure was constitutionally justified. (Objs. at 3.) He argues that "the mission of the traffic stop concluded with the driver being placed under arrest for having no proof of insurance," and while Henry was lawfully seized during the duration of the stop, he should have been permitted to leave when he requested to do so. (*Id.*) Henry contends that his requests to leave occurred before officers discovered marijuana on Kochen, which is when the officers determined that this was a narcotics investigation, requiring a vehicle search. (*Id.*)

The Court disagrees. After officers stop a vehicle, they are entitled to investigate the suspected traffic violation, as well as make "ordinary inquiries incident to the traffic stop," including checking the driver's license, vehicle registration, and insurance. *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). A seizure prompted by the initial interest in investigating a traffic violation may become unlawful if it is unnecessarily prolonged, *see Illinois v. Caballes*, 543 U.S. 405, 407 (2005), but the duration of a seizure may be extended if officers can identify specific and articulable facts that amount to a reasonable suspicion that further investigation is warranted. *United States v. Murillo-Salgado*, 854 F.3d 407, 415 (8th

8

Cir. 2017). Courts consider the totality of the circumstances when evaluating the existence of reasonable suspicion and whether the duration of the stop is excessive. *Id.*

As Magistrate Judge Menendez observed, early in the encounter with the Cutlass Sierra, Office Matz observed what he suspected was a digital scale on the driver's side floorboard. (R&R at 7.) Combined with the evasive driving and the time of day, this gave him reasonable suspicion to believe that criminal activity was underway, which permitted him to extend the stop somewhat to further investigate potential narcotics activity.[1] Moreover, as Magistrate Judge Menendez found, early in the stop, Officer Matz discovered that Kochen lacked a valid license and insurance, which prompted him to arrest Kochen. (*Id.* at 7–8.) During the search of Kochen, incident to arrest, Officer Matz discovered marijuana on Kochen's person. (*Id.* at 8.) The presence of marijuana, combined with the evasive driving and digital scale, provided probable cause to search the Cutlass Sierra. *United States v. Davis*, 569 F.3d 813, 817–18 (8th Cir. 2009) (finding that discovery of drugs on the defendant's person provided probable cause to search the vehicle).

---

[1] The Court agrees with the magistrate judge in not crediting Officer Matz's inferences of drug-related activity based on his observation that Kochen and Henry were smoking, or from the presence of glue sticks in the vehicle. (R&R at 8 n.1.) The Court likewise finds that cigarette use may be innocent, and is unaware of a correlation between glue sticks and drug use.

Henry objects to Officer Matz's testimony concerning the "torn up" condition of the interior of the Cutlass Sierra, arguing that the condition is unrelated to a reasonable inference of criminal activity, and he objects to Officer Matz's testimony regarding Kochen's unwillingness to answer a question posed by Officer Matz, arguing that Kochen's conduct is unrelated to Henry. (Objs. at 4–5.) However, the magistrate judge did not rely on this testimony in reaching her conclusions about probable cause—she merely noted the testimony when recounting the factual background. (R&R at 2–3.) Accordingly, the Court does not address it.

9

Henry objects, arguing that he was unlawfully detained despite his repeated requests to leave. (Objs. at 3–4.)  But a passenger may be lawfully detained with the driver during a vehicle *Terry* stop.  *See Brendlin v. California*, 551 U.S. 249, 257–58 (2007); *Waters v. Madson*, 921 F.3d 725, 739 (8th Cir. 2019).  The Court agrees with the magistrate judge that Henry's short detention while Kochen was removed from the car, handcuffed, and searched did not violate his Fourth Amendment rights.

While the "tolerable duration" of a police inquiry in the context of a traffic stop is determined by the seizure's "mission" of addressing the traffic violation and attending to safety concerns, *Rodriguez*, 575 U.S. at 354, Kochen's arrest did not complete the mission.  Safety issues required the police to continue to control the scene while Kochen was being arrested.  When there is more than one occupant in a vehicle, the potential sources of risk of harm to police officers increase.  *United States v. Sanders*, 510 F.3d 788, 789–90 (8th Cir. 2007) (citing *Maryland v. Wilson*, 519 U.S. 408, 410 (1997)).   The magistrate judge acknowledged Officer Matz's testimony that he would have let Henry go when he first approached the car, but the magistrate judge found that releasing him would not have addressed the underlying safety concerns:  "[Officer Matz] 'surely was not constitutionally required to give [Mr. Henry] an opportunity to depart the scene after he exited the vehicle without first ensuring that, in so doing, [he] was not permitting a dangerous person to get behind [him].'"  (R&R at 9 n.2) (quoting *Arizona v. Johnson*, 555 U.S. 323, 334 (2009)).  And, as Magistrate Judge Menendez noted, the circumstances here quickly evolved from the moment Officer Matz first approached the car to when Henry requested to leave, after Officer Matz had noticed the digital scale, and after Kochen was being arrested.  (*Id.*)

10

Further, once the officers discovered marijuana in Kochen's pocket, they had probable cause to search the vehicle. *See Davis*, 569 F.3d at 817–18 (8th Cir. 2009). Certainly, they were permitted to remove Henry from the vehicle at that point. *See, e.g.*, *Wilson*, 519 U.S. at 410. The Court agrees with Magistrate Judge Menendez that in light of the presence of the scale in plain sight, the marijuana found on Kochen's person, the evasive driving through a residential neighborhood in the middle of the night, the police had probable cause to believe that Henry was involved in drug activity along with Kochen to justify his continued seizure during the search of the car. Consequently, the time between the initial stop of the vehicle and the search of the vehicle was not so long as to exceed the legal justification for the stop. The Court therefore overrules Henry's objection on this basis.

Finally, the Court finds that the search of Henry's jacket did not violate the Fourth Amendment. As the magistrate judge noted, "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search," *United States v. Ross*, 456 U.S. 798, 825 (1982), including a passenger's personal belongings. *Murillo-Salgado*, 854 F.3d at 418 (citing *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999)). The Court further agrees with the magistrate judge that even if Henry had been permitted to leave the scene, officers would have still been permitted to search the vehicle, including the jacket, and would have discovered its contents. To the extent that Henry objects on this basis, his objection is overruled.

### B. Motion to Suppress Statements

Henry also objects to the magistrate judge's recommendation that his motion to suppress the November 8, 2019 statements be denied. (Objs. at 5–7.) He contends that he did not make a knowing waiver of his rights, and that the statements were obtained through a violation of a clear ethical obligation. (*Id.* at 6.)

The Sixth Amendment right to counsel requires the presence of counsel at all critical stages of the proceedings. *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009). The Supreme Court has found that the right does not attach until a defendant makes his initial appearance in federal court. *See Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 199 (2008) (stating that the right to counsel "attaches at the initial appearance before a judicial officer"), and the Eighth Circuit has ruled that it does not attach with the filing of a complaint under Federal Rule of Criminal Procedure 3. *See United States v. Moore*, 122 F.3d 1154, 1155–56 (8th Cir. 1997).

The magistrate judge correctly observed that Henry's initial appearance in federal court had not yet occurred at the time of his ride to St. Paul—only the complaint and arrest warrant had been filed. (R&R at 11.) Accordingly, she found that Henry had no Sixth Amendment right to counsel with respect to the federal charges contained in the November 7, 2019 criminal complaint. (*Id.*) While Magistrate Judge Menendez acknowledged that Henry was in state custody on charges that were partly identical to the federal charges against him, she declined to address whether the two offenses were sufficiently identical, such that Henry's state court right to counsel was in force during the November 8 car ride. (*Id.* at 11–12) (citing *Texas v. Cobb*, 532 U.S. 162, 173 (2001)). She found that regardless of whether

12

the federal charges were considered the same or distinct from the state charges, Henry was able to waive any right to counsel that he may have had. (*Id.* at 12.)

The Court agrees with the magistrate judge's approach and her findings. In his Objections, Henry first argues that his right to counsel attached when the complaint was filed, although he acknowledges the legal authority to the contrary. (Objs. at 5.) In light of *Moore*, 122 F.3d at 1155–56, the Court overrules his objection on this basis.

As noted in the R&R, even when the Sixth Amendment right to counsel has attached, it may be waived by the defendant, regardless of whether the defendant is currently represented, as long as the waiver is voluntary, knowing, and intelligent. *Montejo*, 556 U.S. at 786. Moreover, "the decision to waive need not itself be counseled." *Id.* Rather, when a defendant is read his *Miranda* rights and agrees to waive them, there is no Sixth Amendment violation, even though *Miranda* rights are rooted in the Fifth Amendment. *Id.*

Henry appears to argue that his waiver was not knowing because the substance of his conversation with Officer McMillin revealed that he did not understand the nature of the charges against him. (Objs. at 6) (stating, "If anything, the R&R's finding understates the level of Mr. Henry's confusion. He clearly had no idea what was happening to him."). But, as the magistrate judge found, the question is not whether Henry understood the nature of the federal charges against him—the question is whether he understood the right to counsel, or the potential consequences of speaking to law enforcement. (R&R at 12–13.) Henry does not argue that he failed to understand his right to counsel, or the consequences of speaking to law enforcement about criminal activity.

Although Henry argues that Minnesota Rule of Professional Conduct 4.2 prohibits an agent of the state or government to interview a defendant without counsel present, (Objs. at 6) (citing Minn. R. Prof. Conduct 4.2), the rule is applicable to attorneys.  Henry does not appear to allege that Investigator McMillin is an attorney, nor does he provide authority for the proposition that a violation of an ethical rule, applicable to attorneys, provides grounds for the suppression of his statements.  Rather, as the Supreme Court has recognized, "the Constitution does not codify [rules of professional responsibility], and does not make investigating police officers lawyers." *Montejo*, 556 U.S. at 790.

For all of the foregoing reasons, the Court agrees with the magistrate judge that Henry's waiver of the right to counsel was valid with respect to the November 8, 2019 statements, and overrules his objection in that regard.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Objection [Doc. No. 50] is **OVERRULED**;

2. The R&R [Doc. No. 48] is **ADOPTED**;

3. Defendant's Motion to Suppress Statements [Doc. No. 22] is **DENIED**; and

4. Defendant's Motion to Suppress Evidence [Doc. No. 23] is **DENIED**.

Dated: June 29, 2020                                s/Susan Richard Nelson
                                                    SUSAN RICHARD NELSON
                                                    United States District Judge