UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 19-303 (SRN/KMM)

United States of America,

          Plaintiff,

vs.

Patrick Lloyd Henry,

          Defendant.

**DEFENDANT'S POSITION WITH RESPECT TO SENTENCING AND REQUEST FOR VARIANCE**

This memorandum is submitted on behalf of Defendant Patrick Lloyd Henry in connection with his sentencing before the Honorable Susan Richard Nelson. This Sentencing Memorandum will first address the applicable statutory sentencing range and the proper guideline calculations. Second, the memorandum will articulate and outline the basis for Mr. Henry's request for a downward variance from the advisory sentencing guideline range and why such a sentence is consistent with the provisions of 18 U.S.C. § 3553(a).

Mr. Henry objects to the determination that he is subject to an enhanced sentence under the Armed Career Criminal Act (ACCA), 18 U.S.C. §924(e). In addition, Mr. Henry objects to a 4-level increase pursuant to USSG § 2K2.1(b)(6)(B), alleging that he possessed the firearm in connection with another felony offense. Accordingly, Mr. Henry will be requesting a sentence less than the advisory guideline range calculated by the PSR because a variance is appropriate based on 18 U.S.C. §3553 (a) factors and his own unique circumstances.

Mr. Henry's troubles started in state court in Olmsted County. This case was originally charged there and had been pending for quite some time, with extensive negotiations between his then-public defender and the state. Shortly before the matter was set for trial, the state made Mr. Henry an offer that would have resulted in significantly less prison time for the same charges based on possession of a firearm and any methamphetamine.

But the state also gave Mr. Henry a short deadline and threatened that, if he did not accept quickly, he would be charged in federal court. Mr. Henry maintains that he was rushed into the decision and did not fully understand the ramifications of federal prosecution under the ACCA. Mr. Henry has long suffered not only from drug abuse but extreme anxiety and mental health issues. Those mental health issues contributed to his inability to properly evaluate the offer that was put forth in state court and now he finds himself in federal court facing a mandatory minimum sentence of fifteen years.

Mr. Henry first argues that he is not subject to the ACCA and so faces a ten-year maximum sentence. In the alternative, he argues that he should receive no more than the 15-year mandatory sentence required by the ACCA, even though that sentence itself is far greater than necessary to achieve the statutory goals of sentencing and is frankly unjust for someone with Mr. Henry's background who has never before been to prison.

**ACCA**

Mr. Henry objects to the determination that he is an armed career criminal and subject to an enhanced sentence under the provisions of the ACCA. A person convicted of Mr. Henry's offense is generally subject to a sentence of up to 10 years in prison, but under the ACCA, defendants with three or more convictions for violent felonies or

serious drug offenses face a maximum of life in prison, with a 15-year mandatory minimum. Here, the PSR points to three offenses as qualifying predicates: a 2011 conviction for domestic assault, a 2017 conviction for third degree drug sale, and a 2017 conviction for first degree drug sale. (*See* PSR ¶¶ 45, 47.)

Mr. Henry objects to the use of the domestic violence conviction because that statute is categorically overbroad. The statute permits conviction when a defendant either "commits an act with intent to cause fear in another of immediate bodily harm or death" or "intentionally inflicts or attempts to inflict bodily harm upon another." Minn. Stat. § 609.2242, subd. 1. Although the second means of committing the crime qualifies as a violent felony, the first means does not categorically involve the use or threat of violence. It is therefore categorically overbroad and should not be counted as an ACCA predicate. Mr. Henry acknowledges, however, that this argument is currently foreclosed by Eighth Circuit precedent. *See*, *e.g.*, *United States v. Schaffer*, 818 F.3d 796 (8th Cir. 2016).

Acknowledging that it is also currently foreclosed, Mr. Henry also objects to the use of the domestic violence conviction because, upon satisfactory completion of the stay of imposition of sentence he received, under Minnesota law his conviction is classified as a misdemeanor offense.

Mr. Henry objects to the use of his drug convictions as separate predicates because they were not "committed on occasions different from one another," as required under 18 U.S.C. § 924(e)(1). Unless these convictions are counted separately, Mr. Henry does not have the three required predicates. Because they are not, he does not qualify for ACCA sentencing.

Finally, Mr. Henry objects to sentencing under the ACCA because even after *Johnson v. United States*, 135 S.Ct. 2551 (2015), the statute remains unconstitutionally vague because the definition of "violent felony" cannot be reasonably ascertained under the existing definition and results in arbitrary punishment, in violation of the Due Process Clause of the Fifth Amendment. That clause guarantees that "no person shall . . . be deprived of life, liberty, or property, without due process of law." And "the Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement. " *Johnson*, 135 S. Ct. at 2556 (citation omitted).

As with the residual clause declared unconstitutionally vague in *Johnson*, the Supreme Court and the lower courts have struggled for decades to determine exactly what it means to qualify as a violent felony under the enumerated-offense or force clauses. The draconian punishment of the ACCA should not depend on definitions so incapable of understanding that the most educated lawyers, judges, and law professors cannot reliably explain them even now, 37 years after the ACCA first became law. The Supreme Court stated that its "repeated attempts and repeated failures to craft a principled and objective standard out of the residual clause confirm its hopeless indeterminacy." *Id*. at 2558. But the remainder of the definition of violent felony is marked by similar attempts and similar failures to craft consistent, principled, objective standards. Because of the "hopeless indeterminacy" of the ACCA's definition of violent felony, Mr. Henry asks the Court not to count his domestic assault conviction as a predicate offense.

4

**Guideline Calculation**

Mr. Henry disputes the 4-level enhancement in PSR ¶ 17 for use of a firearm in connection with another felony offense and the use of the cross-reference in PSR ¶ 18, because he was not charged with nor did he plead guilty to possession of the methamphetamine. The record does not establish that possession of the firearm was in connection with possession with intent to distribute methamphetamine and therefore the 4-level increase should not apply and the cross-reference should not be employed.

**Personal Background**

Mr. Henry now stands before the Court convicted of a serious crime and is facing serious time. Nonetheless, he has accepted responsibility for his actions and entered a plea of guilty and avoided a trial. As stated in his own letter of acceptance to the Court, he knows that what he did was wrong and is prepared to accept his punishment but also that his actions were influenced by his long-standing addiction to alcohol and drugs, specifically methamphetamine.

Mr. Henry was born on February 26, 1983, so he is still a relatively young man well capable of rehabilitation and redirecting his life. His early upbringing was hard, nothing like the ideal of innocent childhood. His father was an alcoholic and abused him severely as a child, rupturing his eardrum during one encounter. Sometimes the abuse came in response to not meeting his father's high expectations, but sometimes his father would abuse him for no reason at all.

This abuse brought on significant anxiety at an early age. Even while young, Mr. Henry began consuming alcohol to help ease his anxieties. This affected his ability to

obtain an education. His alcohol dependency continued through adolescence and early adulthood. Eventually, he started using methamphetamine as well.

Despite his criminal record, Mr. Henry has never spent more than six months in jail. The prospect of potentially losing fifteen years of his life, fifteen years of his son's life, is disturbing and disconcerting, and it is exacerbating his extreme anxiety. Indeed, records from Sherburne County Jail show that, although anxiety is his most long-standing mental health issue, Mr. Henry may also be dealing with other serious issues that have not yet been addressed, given that the jail has noted he suffers from "paranoia, nightmares, auditory hallucinations, anxiety with depression, adjustment disorder with mixed emotional features, adjustment disorder with anxious mood, and generalized anxiety disorder." (PSR ¶ 69.) Mr. Henry would benefit from mental-health counseling and treatment.

When he is not using, Mr. Henry is a good person and a contributing member of society. He learned the value of hard work as a child growing up on a farm, and throughout his life he has worked steady jobs in the construction industry for years at a time and is clearly capable of continuing to contribute to society. His downfall has been his drug and alcohol addiction. Despite numerous treatment attempts, he has not been able to successfully kick that habit. All of this information and background has been confirmed in the numerous letters of support that have been filed on his behalf by family and friends. They present a positive image of Mr. Henry when he is not using drugs and caught in the throes of his longstanding addiction.

At the time of this most recent incident, he had been doing extremely well, but as often happens, he relapsed after losing his job. And when he relapsed, he lost the support

6

of his family and had nowhere to live, which just pushed him further into his addiction. He stopped taking his anxiety medications, relying entirely on self-medicating with alcohol and methamphetamine. As he himself recognized, starting down the road again by taking one more drink led him straight down the path to this offense.

What Mr. Henry desperately needs more than anything is treatment for his mental health and addiction issues. Treatment has been helpful to him in the past, and Mr. Henry believes that it would be helpful to him in the future. He asks the Court to recommend him for RDAP.

**Hard Time**

Mr. Henry also respectfully asks the Court to vary downward because of the extraordinary punishment of having been housed in Sherburne County Jail. Sherburne County Jail is spartan under the best of conditions. There is limited programming, and no opportunity to go outside. People housed in Sherburne County Jail never see the sun, but they do see the lights in their cells, 24 hours a day. Added to the constant noise of people yelling, singing, and crying, it makes sleep almost impossible.

This past year has been even worse. Mr. Henry's time has fallen during the whole of the pandemic. Due to Covid restrictions, people can't even participate in the limited programming the jail offers. The only exercise they can get is what they can do in their cell. For weeks at a time, people have been kept in their cells 22 hours per day, with just two hours out to use the day room. The conditions are damaging, physically and psychologically. Mr. Henry has experienced mental health issues while incarcerated and diagnosed by jail medical staff as suffering from both anxiety and major depression. As noted earlier, he experienced mental health conditions prior to his stay at Sherburne and

the conditions there have not helped. The hard time Mr. Henry has spent in custody has been extraordinarily punitive, and he respectfully asks the Court to take these conditions into account in sentencing.

## CONCLUSION

For all of these reasons, Mr. Henry respectfully asks the Court to give him the lowest possible sentence available. This will be his first time in prison, his first stretch of incarceration longer than six months, so there is no need for an exceptionally long sentence. If the Court should determine that he is an armed career criminal, 180 months is more than sufficient to accomplish the needs of 18 U.S.C. § 3553.

Dated:  March 10, 2021                              Respectfully submitted,

**LAW OFFICES OF
THOMAS H. SHIAH, LTD.**

By      S/Thomas H. Shiah
        Thomas H. Shiah #100365
        331 Second Ave South, Ste 705
        Minneapolis, MN 55401
        (612) 338-0066

        Attorney for Defendant