**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**Criminal No. 19-303 (SRN/KMM)**

_____

United States of America,

                          Plaintiff,

vs.

Patrick Lloyd Henry,

                          Defendant.

**DEFENDANT'S**
**SUPPLEMENTAL**
**SENTENCING**
**MEMORANDUM**

_____

      Defendant Patrick Lloyd Henry, by and through attorney Thomas H. Shiah, respectfully offers the following memorandum in support of his argument that Mr. Henry's two felony drug convictions are not proper predicate offenses under the Armed Career Criminal Act (ACCA). In addition to the arguments previously raised, Minnesota's drug laws are overbroad in how they define methamphetamine and cocaine. *Cf. United States v. Oliver*, --- F.3d ---, No. 19-2209 (8th Cir. Feb. 11, 2021) (vacating an enhanced mandatory sentence under 21 U.S.C. §§ 841 and 851 because, as held by the Seventh Circuit and endorsed by the Eighth Circuit, Illinois drug laws are categorically overbroad in defining cocaine). Because Mr. Henry does not have three qualifying predicates, the statutory maximum in this case is ten years.

      Mr. Henry has convictions for First Degree Drug Sale and Third Degree Drug Sale under Minnesota law that the government seeks to use as predicate "serious drug offenses" leading to an enhanced sentence under the ACCA. (*See* PSR ¶¶ 45,

47.) A "serious drug offense" under the ACCA is either a federal offense or "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))" punishable by ten or more years in prison. 18 U.S.C. § 924(e)(2)(A).

In determining whether a prior drug offense qualifies as a predicate offense for sentencing enhancement, the proper analysis uses a categorical approach that looks only to the statutory definition of the prior offense. *See Oliver*, Slip Op. at 15–16 (citations omitted). "If the state offense sweeps more broadly, or punishes more conduct than the federal definition, the conviction does not qualify as a predicate offense." *Id*. at 16 (quoting *United States v. Vanoy*, 957 F.3d 865, 867 (8th Cir. 2020)).

As will be explained in more detail below, Minnesota drug laws punish more isomers of cocaine and methamphetamine than federal drug law, which makes them overbroad. "Isomers" are two or more molecules that are identical in chemical formula, but which differ in their structure and arrangement. *See*, *e.g.*, Ernest L. Eliel, et al., Stereochemistry of Organic Compounds 1021 (1994). Minnesota definitions of these substances include all possible isomers, while the federal definition is limited to the optical isomer of methamphetamine and the optical and geometric isomers of cocaine.

Mr. Henry's First Degree Sale conviction is defined under Minn. Stat. § 152.021, subd. 1: "A person is guilty of controlled substance crime in the first degree if . . .

the person unlawfully sells one or more mixtures of a total weight of 17 grams or more containing cocaine or methamphetamine[.]" Mr. Henry's conviction for Third Degree Sale punishes those who sell "one or more mixtures containing a narcotic drug[.]" Minn. Stat. § 152.023, subd. 1(1). "Narcotic drug" is defined to include both cocaine and methamphetamine. *See* Minn. Stat. § 152.01, subd. 10.

Cocaine is a controlled substance in Minnesota, defined to include any of its isomers without limitation:

> coca leaves and any salt, cocaine compound, derivative, or preparation of coca leaves (including cocaine and ecgonine and their salts, isomers, derivatives, and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances[.]

Minn. Stat. § 152.02, subd. 3(b)(4). Likewise, methamphetamine's definition is broad enough to include any isomer, including "methamphetamine, its salts, isomers, and salts of its isomers[.]" Minn. Stat. § 152.02, subd. 3(d)(2).

Federal law is much narrower. Under federal law, cocaine is defined to include only "optical and geometric isomers[.]" 18 U.S.C. § 813, Sched. II(a)(4). All isomers apart from the optical and geometric, which could be punished under Minnesota law, are exempt from punishment under federal law, which makes the Minnesota law overbroad. *See United States v. Ruth*, 966 F.3d 642, 647 (7th Cir. 2020) (finding the defendant's Illinois statute of conviction overbroad because it punished "optical, positional, and geometric isomers" of cocaine, as opposed to optical and geometric isomers only).

Methamphetamine's federal definition is even more narrow than for cocaine. Methamphetamine is defined under federal law as "any quantity of methamphetamine, including its salts, isomers, and salts of isomers." 21 U.S.C. § 812, Schedules II(c) and III(a)(3). Although this sounds on its face identical to the Minnesota definition, federal law has a specific definition of "isomer" that differs for the different drug schedules. For schedules II(c) and III(a)(3), where methamphetamine appears, "isomer" means ***only*** "the optical isomer." 21 U.S.C. § 802(14); *see United States v. De La Torre*, 940 F.3d 938, 951 (7th Cir. 2019) (analyzing 21 U.S.C. § 802(14) and concluding that, "for purposes of federal drug offenses, methamphetamine includes only its optical isomers," before ruling overbroad the Illinois statute under which the defendant was convicted).

The Minnesota legislature knew how to limit the definitional isomers when it wished, demonstrating that it was a conscious choice to leave the definitions of cocaine and methamphetamine as broad as possible. The Minnesota legislature limits the definition of amphetamine, for example, to just its "optical isomers." *See* Minn. Stat. § 152.02, subd. 3(d)(1). And the "usual rule" of statutory construction suggests that, "when the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 712 n.9 (2004).

As far as counsel is aware, this argument has not yet been raised in Minnesota, but it has led to several resentencings in the Seventh Circuit, and in *Oliver* the Eighth

Circuit accepted the logic of those decisions. The logic of those Seventh Circuit decisions applies as well to Minnesota's drug laws.

The first of these decisions ruled that an Indiana drug conviction could not be used as a predicate "felony drug offense" to enhance a federal mandatory-minimum sentence under 21 U.S.C. §§ 841 and 851 because of the included isomers of methamphetamine. *See United States v. De La Torre*, 940 F.3d 938, 951–52 (7th Cir. 2019). Unlike the federal definition of methamphetamine, which includes only optical isomers, the Indiana law punishes all "isomers" without qualification, using the same language as Minnesota. *See id*. at 951 (quoting Ind. Code § 35-48-2-6(d)(2), which lists "methamphetamine, including its salts, isomers, and salts of its isomers"). "Because the federal definition of methamphetamine includes only its optical isomers whereas the Indiana definition includes something more than just optical isomers of methamphetamine, the mismatch renders the Indiana statute overbroad." *Id*.

The following year, in *Ruth*, the Seventh Circuit came to a similar conclusion regarding the isomers of cocaine punished in Illinois, finding plain error where the appellant's sentence was enhanced under 21 U.S.C. §§ 841 and 851. *See* 966 F.3d at 650–51. The federal definition of cocaine, *Ruth* noted, is limited to "optical and geometric" isomers, while Illinois also includes positional isomers. *See id*. at 647 (comparing 21 U.S.C. §§ 812, Sched. II(a)(4) and 802(14) with 720 ILCS 570/206(b)(4)). Because of this mismatch, "on its face . . . the Illinois statute is categorically broader than the federal definition." *Id*. In finding plain error and

5

vacating the appellant's sentence, the Seventh Circuit rejected as irrelevant a research chemist's affidavit swearing that he had never encountered positional isomers in analyzing over 50,000 cocaine samples during his tenure at the DEA. *See id*. at 648. "We must," wrote the Seventh Circuit, "give effect to the law as written."

Although the Seventh Circuit has not adopted this argument specifically in terms of the ACCA, the implications are clear. In *United States v. Nebinger*, --- F.3d ---, No. 19-1504, Slip Op. at 12–13 (7th Cir. Feb. 11, 2021), they rejected a *Ruth* challenge to Illinois drug convictions used as ACCA predicates not because it failed on the merits, but because those arguments were forfeited where "Ruth made the same argument that . . . Nebinger could have made" but didn't. At least one district court has followed *Ruth* in vacating an ACCA sentence that had been based on an Indiana drug predicate. *See Alston v. United States*, No. 2:16-cv-00016-JMS-DLP (S.D. Ind. Jan. 11, 2021) (granting a § 2255 motion where Indiana's law was overbroad in how it punished isomers of cocaine).

The Eighth Circuit has now accepted the logic of these decisions. In *Oliver*, the panel addressed an appellant whose mandatory-minimum sentence was enhanced based on an Illinois drug conviction. "Applying the categorical approach," the panel wrote, "we see that 720 Ill. Comp. Stat. 570/401 is broader than the federal definition of a 'serious drug felony.'" *Oliver*, Slip Op. at 17 (citing *Ruth*, 966 F.3d at 645–47). Because there was some question about whether Mr. Oliver had been convicted under the part of the divisible statute dealing with cocaine, his enhanced

sentence was vacated and the matter remanded for resentencing because of the overbreadth of the Illinois statute. *See id.*, Slip Op. at 19.

## CONCLUSION

Mr. Henry is not an Armed Career Criminal. His two Minnesota drug convictions came under statutes that define both cocaine and methamphetamine more broadly than the federal definition. Because he does not have three qualifying predicates under 18 U.S.C. § 924(e), Mr. Henry is subject to the standard ten-year maximum for his offense.

Dated:  May 18, 2021                    Respectfully submitted,

**LAW OFFICES OF**
**THOMAS H. SHIAH, LTD.**

By      S/Thomas H. Shiah
          Thomas H. Shiah #100365
          331 Second Ave South, Ste 705
          Minneapolis, MN 55401
          (612) 338-0066

          Attorney for Defendant